UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,  :
                           :    NO. 1:12-CR-066
                           :
                           :    **OPINION & ORDER**
                           :
   v.                      :
                           :
                           :
FABINN WOODSON             :
                           :
                           :
                           :

This matter is before the Court on Mr. Woodson's Motion to Dismiss (doc. 16), Mr. Woodson's Motion to Suppress Evidence (doc. 17), and the Government's responses thereto (docs. 19 & 20). The Court held a hearing in this matter on September 25, 2012. At the hearing, the parties both rested on their briefs as to Mr. Woodson's Motion to Dismiss, and the Court held an evidentiary hearing as to his Motion to Suppress. After the closing of the evidence, the Court instructed the parties to submit supplemental briefs on the issues raised in the hearing. Those briefs have been submitted, and the motions are ripe for the Court's consideration. For the reasons that follow, the Court DENIES Mr. Woodson's Motion to Dismiss (doc. 16) and GRANTS in part and DENIES in part Mr. Woodson's Motion to Suppress (doc. 17).

**I.    The Motion to Dismiss**

Mr. Woodson moves the Court to dismiss the indictment against him or, in the alternative, to strike the Armed Career Criminal Act ("ACCA") provision contained therein (doc. 16). He argues that the ACCA is unconstitutionally vague, in violation of the Due Process Clause of the Constitution. For support, Mr. Woodson relies on a recent dissent from a denial of a petition for certiorari issued by Justice Scalia, wherein he expressed his opinion that the definition of a "violent felony" under the ACCA is unconstitutionally vague (Id., citing Derby v. United States, 131 S.Ct. 2858 (2011)(Scalia, J., dissenting)).

The ACCA provides that any person convicted of being a felon in possession of a firearm must receive a sentence of at least fifteen years imprisonment if he "has three previous convictions by any court…for a violent felony or serious drug offense, or both." 18 U.S.C. §924(e)(1). Mr. Woodson stands charged with being a felon in possession of a firearm and would thus be subject to the fifteen-year mandatory sentence if he is convicted of the charge and if it is determined that he has three previous violent felony or serious drug offense convictions. A "violent felony" for ACCA purposes is

> Any crime punishable by imprisonment for a term exceeding one year . . . that - (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that

>presents a serious potential risk of physical harm to another….18 U.S.C. §9245(e)(2)(B).

Mr. Woodson's prior convictions include Kidnapping with a gun specification, Felonious Assault, and Attempted Failure to Comply, none of which is specifically enumerated in the above definition of a "violent felony." Consequently, should Mr. Woodson face sentencing on the gun charge, the Court will need to evaluate whether those prior convictions constitute crimes that "otherwise involve[] conduct that presents a serious potential risk of physical harm to another" under the ACCA's residual clause found in subsection (ii) above. Mr. Woodson essentially contends that the Court is bereft of effective guidance from the Supreme Court or the Sixth Circuit, which therefore renders the statute unconstitutionally vague.

However, as the Government notes in its response, the Supreme Court rejected this vagueness argument in the ACCA context when it was raised by Justice Scalia in a dissent. <u>See James v. United States</u>, 550 U.S. 192, 210 n. 6 (2007). Specifically, the majority wrote, " While ACCA requires judges to make sometimes difficult evaluations of the risks posed by different offenses, we are not persuaded by Justice Scalia's suggestion…that the residual provision is unconstitutionally vague. The statutory requirement that an unenumerated crime 'otherwise involv[e] conduct that presents a serious potential

3

risk of physical injury to another' is not so indefinite as to prevent an ordinary person from understanding what conduct it prohibits." Id. Citing to James, the Sixth Circuit recently also declared that the ACCA's residual clause is not unconstitutionally vague. United States v. Fowler, 457 Fed.Appx. 533, 534 (6th Cir. 2012).

Given the clear decisions of both the United States Supreme Court and the Sixth Circuit, which explicitly reject the argument set forth by Mr. Woodson, the Court DENIES Mr. Woodson's Motion to Dismiss (doc. 16).

**II. The Motion to Suppress**

Mr. Woodson moves to suppress the evidence against him on both Fourth and Fifth Amendment grounds. The Court takes each in turn.

**A. Mr. Woodson's Fourth Amendment Rights Were Not Violated**

At the hearing, Detective Horton testified that when he executed the warrant he gave Mr. Woodson a copy of the affidavit used to secure the warrant. The Government produced a copy of the search warrant affidavit that included a detailed fact section, the issuing judge's signature, and a stamp from the Butler County Clerk of Courts attesting that it was a true copy of the original filed on January 25, 2012. However, at the hearing, Mr. Woodson produced the copy that was given to him by Detective Horton at the time of the warrant's execution, and it

4

differs from the copy produced by the Government. Specifically, the section entitled "AFFIANTS [sic] BELIEF IS BASED UPON THE FOLLOWING FACTS" is blank, and Mr. Woodson's copy does not include the Clerk of Courts' stamp. Detective Horton explained that he had created two versions of the affidavit: the one produced by the Government with the Clerk's stamp and the completed fact section is, according to Detective Horton, the one presented to the issuing judge. The other, produced by Mr. Woodson, is a copy of that warrant but, Detective Horton testified, he made a copy of it while covering the fact section with a piece of paper in order to white it out. He did this, he said, in order to protect both the identity of the confidential informant and the investigation.[1]

Mr. Woodson argues that the Court should suppress the physical evidence against him on the basis that the evidence is the fruit of an arrest effectuated without probable cause and an invalid search warrant (doc. 17). Specifically, on the basis of the blank fact section of his copy of the affidavit, Mr. Woodson contends that the affidavit used to secure the warrant was defective because it did not contain any facts or, perhaps, the

---

[1] The Government claims that "[h]e did not, in fact, testify that in this specific case the information was redacted to protect the informant's identity. He testified that in this specific case and every other specific case, the information is always redacted to protect the investigation itself." The Government is simply wrong. Detective Horton repeatedly testified that he whited out the fact section of the copy given to Mr. Woodson in order to protect the informant. Even in response to the Government's own question, he said that it is done "so as not to, at that time, allow them to gain any information about the confidential informant."

5

affidavit contained different information than what was ultimately listed after the execution of the warrant (doc. 27). In the alternative, Mr. Woodson argues that the warrant fails, even if the Court believes that the affidavit submitted by the Government at the hearing is an accurate copy of the affidavit that the judge relied on to issue his warrant, because the information contained in that affidavit is insufficient to provide probable cause for the warrant (Id.).

The Court finds that Detective Horton's testimony regarding the affidavit was credible. Most importantly, he testified that his department whites out fact sections on affidavits as a matter of "operating procedure" in order to prevent those being served with warrants from getting any information about the confidential informant used or "how the buy was conducted." Mr. Woodson produced no evidence to refute that assertion, and the Court was simply given no reason not to believe that this is, in fact, the department's operating procedure. Mr. Woodson argues that redacting the fact section in order to protect the confidential informant in this case was not necessary because the fact section did not contain any identifying information, and he therefore urges the Court to disbelieve Detective Horton. However, if it is the department's policy to redact the fact section of affidavits, then it does not matter whether in this particular case such measures are

necessary. Therefore, Mr. Woodson's arguments regarding the lack of identifying information in this particular affidavit do not persuade the Court to find Detective Horton's testimony unbelievable.

Mr. Woodson presents two theories to explain the discrepancy between his copy of the warrant and the Government's copy. Mr. Woodson's first theory, that his copy—with no fact section-is an accurate reflection of the copy signed by the issuing judge, has no basis in evidence. Nothing was presented at the hearing from which the Court could reasonably conclude that the Butler County judge who issued the warrant did so without being presented with any facts whatsoever. As the Government notes in its post-hearing brief, such a contention carries with it the implication that the judge committed malfeasance, and the Court has no evidence before it to support such a conclusion.

Mr. Woodson's second theory, that some different version of facts was presented to the issuing judge, then whited out, then filled in on the filed copy, is similarly without evidentiary support.[2] It is creative conjecture, but that is all

---

[2] In his post-hearing brief, Mr. Woodson urges the Court to engage in a forensic examination of the two copies, arguing that because they do not perfectly line up Detective Horton must be lying. Simply put, if Mr. Woodson's position rests on an assertion that one or both of the copies is a fraud, he should have presented evidence to that effect. Without the guidance of, for example, an expert in forged copies, the Court cannot engage in the detective work Mr. Woodson suggests.

7

that it is.  Detective Horton's uncontroverted testimony was that the information found in the fact section of the copy of the warrant produced at the hearing was the same text presented in the fact section of the warrant given to the issuing judge. Finding that testimony credible, the Court can only conclude that the issuing judge had before him at the time he issued the warrant the same information that was produced at the evidentiary hearing in this matter.

The question then is whether that information was sufficient to provide the issuing judge with probable cause to issue the warrant.  Mr. Woodson argues that it was not sufficient because the affidavit contains false information that should be stricken and, without that information, nothing connects Mr. Woodson to the residence searched (doc. 27). Specifically, Mr. Woodson points to the first sentence of the fact section, which reads in relevant part, "Detectives…have received information from a reliable confidential informant that the resident at 1717 Parrish Ave. is selling heroin."  He argues that this statement was an intentionally false statement, as evidenced by Detective Horton's testimony at the hearing that the informant did not know where Mr. Woodson resided, only that the informant believed Mr. Woodson lived on "the Hill."[3]

---

[3] As Detective Horton explained, "the Hill" is a known term for a certain section of Hamilton, Ohio, where Parrish Avenue is located.  Bedrock Road is not located on the Hill.

In addition, Mr. Woodson notes that Detective Horton testified that, prior to seeking the warrant, he ran two separate searches on Mr. Woodson's residence, and both searches showed that Mr. Woodson's residence was 70 Bedrock Road, which information was not contained in the search warrant affidavit. Because the affidavit contained a false statement (that the confidential informant told detectives that the resident at 1717 Parrish Ave. was selling heroin) and it omitted material, known evidence (the searches linking Mr. Woodson to 70 Bedrock Rd.), Mr. Woodson argues the warrant must be invalidated (doc. 27, citing, inter alia, United States v. McPhearson, 469 F.3d 518 (6th Cir. 2006); United States v. Laughton, 409 F.3d 744 (6th Cir. 2005); United States v. Fowler, 535 F.3d 408, 415 (6th Cir. 2008)).

The Government argues that the search warrant is valid because it should not be read to mean that the confidential informant told detectives that Mr. Woodson was a resident at 1717 Parrish Avenue but that, instead, the phrase "the resident at 1717 Parrish Avenue" is merely an identifier for Mr. Woodson. The Government notes that, although Detective Horton knew Mr. Woodson's name, he did not use his name on the affidavit anywhere but instead used the phrase "the resident at 1717 Parrish Avenue" each time a name would otherwise have been appropriate.

Further, the Government contends that reading "the resident at 1717 Parrish Avenue" as an identifier is the only way to read the affidavit so that it makes sense in the context of Detective Horton's testimony. Specifically, the Government points to the following. Detective Horton testified that a confidential informant informed him that someone known as either "Black" or "Head" was selling heroin. Detective Horton then used that confidential informant to set up a controlled buy, which Detective Horton himself witnessed. Detective Horton ran the license plate of the car driven by the seller, and it was registered to Mr. Woodson, whom Detective Horton recognized as being the seller in the controlled buy, with an address of Bedrock Road in Monroe, Ohio. Detective Horton then asked the confidential informant where the seller lived, and he was told that he didn't know other than that he lived on the "Hill." Detective Horton knew that Bedrock Road was not on the Hill. Detective Horton also testified that he saw Mr. Woodson's car parked in front of 1717 Parrish, which is on the Hill, and that, for the second controlled buy, a detective watched Mr. Woodson exit from 1717 Parrish at the appointed time and proceed to the controlled buy site. Detective Horton also testified that he knew that Mr. Woodson had made a crime report, and 1717 Parrish Avenue was a listed address on the report.[4] The Government

---

[4] He testified on cross examination that he could not recall the nature of the

argues that these facts gave Detective Horton probable cause to believe that Mr. Woodson was "the resident at 1717 Parrish Avenue."[5]

The wording of the affidavit in this matter is unfortunate, not least because it is not immediately clear whether the phrase "the resident at 1717 Parrish Avenue" is, as the Government contends, merely an identifier used in place of Mr. Woodson's name, or whether it is, as Mr. Woodson contends, a statement erroneously attributed to the confidential informant. However, given the uncontroverted testimony of Detective Horton and the use of the phrase "the resident at 1717 Parrish Avenue" three times in the fact section where a name would otherwise be used, the Court finds that the Government's reading of the affidavit is correct. Thus, the Court concludes that Detective Horton was not asserting in his affidavit to the issuing judge

---

report and could not remember if 1717 Parrish was listed as Mr. Woodson's address or merely as where the crime allegedly occurred.

[5] The Government also contends that the following facts counter Mr. Woodson's assertion that the statement regarding the "resident at 1717 Parrish Avenue" was knowingly false. First, mail addressed to Mr. Woodson was found at the residence at the time the warrant was executed; second, Detective Horton observed Mr. Woodson return to 1717 Parrish Avenue at approximately the same time two days in a row, presumably returning from work, just prior to the execution of the warrant; and, third, Mr. Woodson told officers at the time of his arrest that he was the only resident at 1717 Parrish Avenue. None of these facts is availing. The question before the Court is whether the statement was knowingly false at the time it was made to the judge issuing the warrant, not whether it became true as facts emerged after the warrant was issued or executed. Further, because the Court has determined that all statements made by Mr. Woodson at the time of his arrest and at the police station must be suppressed, any reliance on an admission that he lived at 1717 Parrish Avenue is misplaced. However, because the Court has determined that Detective Horton had sufficient information from which he could reasonably conclude that Mr. Woodson was, in fact, a resident at 1717 Parrish Avenue, that statement was, by implication, not knowingly false.

that the confidential informant told him that Mr. Woodson lived at 1717 Parrish Avenue but, instead, that the confidential informant told him that someone, whom Detective Horton identified as "the resident at 1717 Parrish Avenue", was selling heroin. Detective Horton reasonably made that identification based on his observations of Mr. Woodson parking in front of that house, his colleague's observation of Mr. Woodson leaving that house for the second controlled buy, Mr. Woodson's connection to the address via the police report, and the confidential informant's assertion that Mr. Woodson lived on the Hill (not on Bedrock Road). These facts were sufficient to counter the data searches linking Mr. Woodson to the address at Bedrock Road, such that Detective Horton was not remiss in failing to include the Bedrock Road information in the affidavit.

Mr. Woodson's reliance on McPhearson and Laughton is misplaced because they are too factually dissimilar. In McPhearson, the affidavit merely stated that the defendant, who resided at the site of the search, was arrested for a non-drug offense with some amount of crack cocaine on him. 469 F.3d at 524. The court found that those facts did not provide probable cause because "a suspect's mere presence or arrest at a residence is too insignificant a connection with that residence to establish" a nexus between the place to be searched and the

12

evidence sought.  Id.  Here, Mr. Woodson was not merely present at 1717 Parrish Avenue.  Instead, he was seen leaving 1717 Parrish Avenue at the time appointed for the controlled buy, he was followed uninterrupted to the appointed buy site, and he was seen engaging in the buy.  Given that, "the affiant and the issuing judge could infer that there was a fair probability that drugs were being stored in the residence or that drug trafficking was taking place from the residence, such that a search of the residence would be likely to yield contraband or evidence of a crime."  United States v. Ellison, 632 F.3d 347, 349 (6th Cir. 2011).

In Laughton, the affidavit "simply listed the address of the premises to be searched, a summary of the deputy's professional experience, and two acontextual allegations against [the defendant]."  409 F.3d at 751.  As the court noted, it did not describe where the confidential informant had made his purchases or even that he had purchased the drugs at issue from the defendant, nor did it indicate where the defendant's residence was.  Here, in contrast, the affidavit presented detailed information about the controlled buys and connected those buys to "the resident at 1717 Parrish Avenue," the site to be searched.

For the reasons set forth above, the Court finds that the search warrant in this case was supported by probable cause,

13

and Mr. Woodson's Fourth Amendment rights were therefore not violated.

**B. Mr. Woodson's Fifth Amendment Rights Were Violated**

Mr. Woodson argues that the Court should suppress any statements he made to police because he was interrogated without receiving the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966), in violation of his Fifth Amendment rights (doc. 17). For support, Mr. Woodson points to the testimony of Detective Horton, who stated that he administered Mr. Woodson his Miranda rights at the scene of his arrest and later obtained a written waiver of those rights from Mr. Woodson at the police station, which waiver he then claimed to have lost. Critically, Mr. Woodson contends, while Detective Horton testified that he advised Mr. Woodson of his right to remain silent, that any statements could be used against him and that he could consult with an attorney, Detective Horton did not testify to advising Mr. Woodson of his right to appointed counsel if he could not afford an attorney. The Government contends that, to the best of its recollection, Detective Horton did testify that he advised Mr. Woodson of all four elements of Miranda but notes that if Mr. Woodson's recollection of Detective Horton's testimony is accurate, it must concede the issue (doc. 28).

The Court has reviewed the transcript of the evidentiary hearing at which Detective Horton testified, and Mr.

14

Woodson's recollection is correct: At no point during the hearing did he testify that he advised Mr. Woodson of his right to appointed counsel. Instead, he repeatedly stated that he advised Mr. Woodson of only three of the four required Miranda elements. Consequently, the Government has not carried its burden of proof in response to Mr. Woodson's challenge, and the Court therefore GRANTS Mr. Woodson's motion as it relates to his statements, which were obtained in violation of the Fifth Amendment. See United States v. Tillman, 963 F2d. 137, 141 (6th Cir. 1992). Therefore, all statements made by Mr. Woodson, whether at the scene of his arrest or at the police station, are hereby suppressed.

SO ORDERED.

Dated: October 24, 2012	s/S. Arthur Spiegel
　　　　　　　　　　　　　　　S. Arthur Spiegel
　　　　　　　　　　　　　　　United States Senior District Judge